UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>CANON INC., et al.,<br><br>            Defendants. | Case No. 14-cv-03640-CW   (DMR)<br><br>Case No. 14-3646-CW (DMR)<br><br>**ORDER ON JOINT DISCOVERY LETTER**<br><br>Re: Dkt. Nos. 91, 307 |
| TECHNOLOGY PROPERTIES LIMITED LLC, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>SEIKO EPSON CORP., et al.,<br><br>            Defendants. | |

This patent discovery dispute involves Plaintiffs Technology Properties Limited LLC ("TPL") and MCM Portfolio LLC ("MCM") on the one hand, and Defendants Seiko Epson Corporation and Epson America, Inc. ("Seiko Epson") and Canon Inc.; and Canon U.S.A., Inc. ("Canon") on the other.[1]  Defendants challenge the sufficiency of Plaintiffs' infringement contentions.  [Docket Nos. 307 (No. C 14-3640), 91 (No. C14-3646) (Joint Letter).]  The court conducted a hearing on July 16, 2015.  For the following reasons, Defendants' motion to compel Plaintiffs to amend their infringement contentions is denied.[2]

**I. Background**

---

[1] The court refers to the four moving defendants collectively as "Defendants."

[2] During the pendency of this dispute, the court ordered Plaintiffs to lodge, not file, a copy of their infringement contentions, which are voluminous.  [Docket No. 324.]  Either party may file an administrative motion to supplement the record on this motion and seek leave to file the relevant portions of Plaintiffs' infringement contentions.

In these related patent cases, Plaintiffs allege that Defendants' products infringe one or more patents issued to MCM and licensed by TPL. In March 2012, Plaintiffs filed suits against Seiko Epson and Canon in the United States District Court, Eastern District of Texas. The suits involve U.S. Patent Nos. 7,295,443 ("the '443 patent"), and 7,522,424 ("the '424 patent"), both entitled "Smartconnect Universal Flash Media Card Adapters." [Docket No. 97[3] (Am. Compl. (Canon)) ¶¶ 11, 22; 101 (Am. Compl. (Seiko Epson)) ¶¶ 11, 22.] These patents relate to memory card readers, which are used in electronic devices such as laptops and printers to view digital photos and videos.[4] The court issued a stay pending resolution of an action filed by TPL with the United States International Trade Commission ("ITC"), and lifted the stay in February 2014 after the ITC proceedings concluded.

In August 2014, the court transferred the cases to the Northern District of California. In October 2014, these two cases, along with other patent infringement cases brought by Plaintiffs against various defendants, were related before the Hon. Claudia Wilken. The other defendants in the related cases are Hewlett-Packard Company (No. C 14-3643) and Newegg Inc. and Rosewill Inc. (No. C 14-3645 CW). Plaintiffs assert that products made by all related defendants infringe the same claims or subset of claims of the '443 and '424 patents.[5] Plaintiffs' position with respect to their infringement contentions is that all of the accused products operate in "a similar way." (Infringement Contentions Ex. 1 at 5.)

In the present motion, the parties dispute the sufficiency of Plaintiffs' infringement contentions as to Seiko Epson and Canon only. No other related defendants join in this dispute.

## II. Legal Standards

Patent Local Rule 3-1 requires a party claiming patent infringement to serve infringement

---

[3] All further docket references are to the entries in the lead case, No. 14-3640-CW, *Technology Properties Ltd. LLC v. Canon Inc.*, unless otherwise noted.

[4] Plaintiffs allege that the '443 patent discloses a "multi-media memory adapter," and that the '424 patent discloses "an apparatus with a port that has a number of sets of contact pins mounted at locations adapted to interface with the electrical contacts of different types of flash memory cards."

[5] Plaintiffs also accuse Hewlett-Packard Company of infringing claims of a third patent, U.S. Patent No. 7,719,847.

contentions. Among other things, the contentions must identify for each asserted claim "each accused apparatus, product, device, process, method, act or instrumentality ('Accused Instrumentality') . . . of which the party is aware." Patent L.R. 3-1 (b). The identification required under Rule 3-1(b) "shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known." Patent L.R. 3-1(b). This rule generally "require[s] specific identification of particular accused products." *Oracle Am., Inc. v. Google, Inc.*, No. 10-3561 WHA, 2011 WL 4479305, at *2 (N.D. Cal. Sept. 26, 2011) (emphasis removed). It does "not tolerate broad categorical identifications" or "the use of mere representative examples." *Id.* Rather, "a full list of accused products must be disclosed as part of a party's infringement contentions" if they are known to the plaintiff. *Id.*

The infringement contentions also must contain a "chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality." Patent L.R. 3-1(c). The claim chart must "compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products . . . ." *Bender v. Maxim Integrated Prods., Inc.*, No. 09-1152 SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010) (quotation omitted).

The purpose of Rule 3-1, and all of the court's Patent Local Rules, is "make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." *Blue Spike, LLC v. Adobe Sys., Inc.*, No. 14-CV-01647-YGR (JSC), 2015 WL 335842, at *3 (N.D. Cal. Jan. 26, 2015) (citing *Bender*, 2010 WL 1135762, at *2). Specifically, Rule 3-1 is a discovery device that sets forth the standards for disclosing asserted claims and infringement contentions. It "takes the place of a series of interrogatories that defendants would likely have propounded had the patent local rules not provided for streamlined discovery." *Intertrust Techs. Corp. v. Microsoft Corp.*, No. 01-1640 SBA, 2003 WL 23120174, at *1 (N.D. Cal. Dec. 1, 2003) (citation and quotation marks omitted); *accord Bender v. Freescale Semiconductor, Inc.*, No. 09-1156 PHJ (MEJ), 2010 WL 1689465, at *2 (N.D. Cal. Apr. 26, 2010). Rule 3-1 requires that a plaintiff's infringement contentions "must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a

3

reasonable chance of proving infringement" and "to raise a reasonable inference that all accused products infringe." *Shared Memory Graphics, LLC v. Apple, Inc.*, No. 10-2475 MMC (JSC), 2011 WL 3878388, at *4 (N.D. Cal. Sept. 2, 2011) (quotation omitted).

### III. Discussion

Plaintiffs accuse approximately 155 Canon products and 63 Seiko Epson products. In their infringement contentions, Plaintiffs contend that Defendants' products infringe up to four claims of the '424 patent and up to eight claims of the '443 patent, and that all of Defendants' accused products infringe the asserted claims in "the same way." (Joint Letter 4.) Plaintiffs provided claim charts for three Canon products and four Seiko Epson products, which collectively set forth the infringement theories for each allegedly infringed claim. Plaintiffs assert that these charted products are representative of their infringement contentions with respect to all of Defendants' accused products.

Defendants argue that Plaintiffs' infringement contentions are deficient because they fail to identify which accused products infringe which claims. They also assert that Plaintiffs have not established why their claim charts are representative of all accused products. Defendants request that the court order Plaintiffs to serve amended infringement contentions that comply with Patent Local Rule 3-1. In the alternative, they ask the court to limit Plaintiffs' contentions to the specific products for which Plaintiffs have provided a claim chart.

**A.    Adequacy of Plaintiffs' Identification of Infringing Products**

First, Defendants point to inconsistencies between two exhibits attached to Plaintiffs' infringement contention to support their argument that the contentions do not clearly identify which claims and patents are being asserted against each product. Exhibit 27, entitled "Product List," is categorized by defendant and identifies the specific claims of the '424 and '443 patents allegedly infringed by each accused product. Exhibit JJ is a chart titled "Infringement Analysis for Seiko Epson." It also appears to list claims for three patents (including one patent no longer at issue) allegedly infringed by each accused Seiko Epson product. Defendants assert that the "identity of asserted claims" for the Seiko Epson products shown in Exhibit 27 "is different from the asserted claims identified for multiple [Seiko] Epson products shown in Exhibit JJ." (Joint

4

Letter 2-3.)

At the hearing, Plaintiffs clarified that Exhibit 27 is the list of accused products in this case, while Exhibit JJ was created for the ITC proceedings and is not intended to depict the issues before this court. Plaintiffs' counsel represented that any products listed on Exhibit JJ that do not appear on Exhibit 27 are not accused in this case. This is consistent with Plaintiffs' representation in their infringement contentions. (*See* Patent Disclosures at 5 ("A complete list of each product that Plaintiffs contends infringes, based on information available to date, is attached as Exhibit 27.")

While Plaintiffs could have made their infringement contentions clearer by eliminating or noting outdated information, there is no question that Defendants understand the information in Exhibit 27. Accordingly, the court finds that Exhibit 27 adequately puts Defendants on notice about the claims asserted against each product in this litigation.

**B.	Representative Claim Charts**

Next, Defendants argue that Plaintiffs' use of representative claim charts is not justified. According to Defendants, Plaintiffs must explain why the charted products are representative of other products, and also must specifically identify the uncharted products represented by each chart.

Patent Local Rule 3-1 does not require a claim chart for every accused product. A plaintiff need only provide enough information to "permit a reasonable inference that all accused products infringe." *Renesas Tech. Corp. v. Nanya Tech. Corp.*, No. 03-cv-5709 JF (HRL), 2004 WL 2600466, at *4 (N.D. Cal. Nov. 10, 2004). A party can rely on representative products to meet its obligations under Patent Local Rule 3-1; however, it must "articulate how the accused products share the same, or substantially the same, infringing [qualities] with any other product or with the . . . 'representative' product []." *Silicon Labs. Inc. v. Cresta Tech. Corp.*, No. 5:14-cv-03227-PSG, 2015 WL 846679, at *1, 2 (N.D. Cal. Feb. 25, 2015). A plaintiff "bears the burden of explaining why its claim chart is representative of all accused products." *Digital Reg. of Tex., LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2013 WL 633406, at *4 (N.D. Cal. Feb. 20, 2013) (citing *Bender*, 2010 WL 1135762, at *3).

5

In their opening brief on claim construction, Plaintiffs describe the patents-in-suit as devices for reading removable memory cards, such as those used by products that capture digital images, including digital cameras and camcorders. Plaintiffs explain that memory cards that record and store photos can be inserted into a computer or printer for viewing and printing, and come in a variety of formats. [Docket No. 282 (Pls.' Claim Construction Br. 1).] The different formats present a problem for devices that need to interface with different types of memory cards. Plaintiffs assert that the patents-in-suit overcome this problem "by enabling production of memory card readers that can accept and read multiple types of flash memory formats in a single slot in a single physical device." (Pls.' Claim Construction Br. 1.) According to Plaintiffs, "the inventions make use of, *inter alia*, a controller to 'map,' or logically assign, the requisite signals between (a) signal lines or interconnection means/pins and (b) contact pins, to enable it to communicate with different card types that may be inserted into a single slot."[6] (Pls.' Claim Construction Br. 2.) The patents-in-suit claim various aspects of the controller's logical mapping so that an inserted card can communicate with the controller. (Pls.' Claim Construction Br. 2-3.)

Plaintiffs contend that the charted products are representative of all of the accused products. They explain that the card readers in all accused products contain the same components

---

[6] Plaintiffs explain their infringement theory for the patents-in-suit as follows:

> [E]ach accused product accommodates SD [Secure Digital] and MMC [MultiMediaCard] memory media cards in a single slot of a memory card reader using a controller. The SD or MMC card inserts into the memory media card adapter. A controller [physically] connects to the signal lines so that the controller can read from and write to the card. The signal lines are electrically connected to contact pins of a memory media card adapter. When a card is inserted into the slot in the card reader, the contact pins electrically connect the corresponding contact pads on the card. The arrangement is illustrated below.
>
> [controller] → signal lines → interconnection means → contact pins → [memory card]
>
> While the *physical* paths between the controller, signal lines, interconnection means/pins, and contact pins are fixed, the signals that are communicated between these paths are not. Although SD and MMC cards share common contact pins, SD cards require a different number of contact pins and signals than MMC cards. The accused products utilize a controller (a chip inside the accused products) to map (or logically assign) the requisite signals between (a) the signal lines or interconnection means/pins and (b) contact pins, to enable the controller to communicate with the inserted card, depending on whether the inserted card is SD or MMC.

(Joint Letter 6-7 (emphasis in original); *see also* Pls.' Claim Construction Br. 1.)

1  and infringe in the same way: that is, by using a controller to assign signals, which enables the
2  controller to communicate with the inserted memory card.  Plaintiffs' infringement contentions
3  include representative claim charts detailing the infringement theory applicable to all accused
4  products.  They also include a statement responding to Defendants' request for further explanation
5  regarding the use of representative products. (Patent Disclosures at 8-11.)  Additionally, the
6  infringement contentions contain a declaration by Plaintiffs' expert, Dale E. Buscaino, in which he
7  explains how each accused product listed in Exhibit 27 infringes certain claims of the '424 and
8  '443 patents.

9  Defendants argue that the infringement contentions are insufficient because Plaintiffs have
10 not established that the charted products are representative of the uncharted products.  They argue
11 that their products "differ in ways significant to Plaintiffs' apparent infringement theories,
12 including by using different controllers, different connector assemblies, and different
13 combinations thereof."  (Joint Letter 1.)  Plaintiffs counter that any differences among the
14 controllers and connector assemblies are immaterial to their infringement theory.  They directly
15 address this argument in their infringement contentions by including exhibits showing various
16 controllers and card connectors in a sampling of Canon and Seiko Epson products.  (Infringement
17 Contentions Exs. 30, 31.)  According to Plaintiffs, they "have not been able to discern any
18 material differences between the controllers and memory card connectors (regardless of the
19 controller/connector combination) in [the accused products] for purposes of infringement."
20 (Patent Disclosures at 8.)

21 As this court has previously held, the existence of product differences does not necessarily
22 affect the question of whether a product is representative of others."  Rather, "[t]he differences
23 must be relevant to the infringement contentions."  *Infineon Techs. AG v. Volterra Semiconductor*,
24 No. C-11-06239 MMC (DMR), 2013 WL 5366131, at *5 (N.D. Cal. July 31, 2013).  Importantly,
25 Defendants do not assert that different controllers and connectors function differently, nor do they
26 explain how variations between the components render the representative products
27 unrepresentative of the uncharted products.  It is telling that Defendants failed to identify any
28

material differences in the joint letter.[7] It is Plaintiffs' burden to "articulate how the accused products share the same, or substantially the same, infringing [qualities] with any other product or with the . . . 'representative' product []." *Silicon Labs. Inc.*, 2015 WL 846679, at *1, 2. Plaintiffs have done so.

## C.     Sufficiency of "Placeholder" Infringement Contentions

Finally, the parties briefly address their dispute regarding another exhibit to the infringement contentions. Exhibit 28 is a chart which lists potential additional accused products, as well as the patent claims they allegedly infringe. In their preliminary statement, Plaintiffs explain that Exhibit 28 "contains a list of products that are accused to the extent that they are, or have been, capable of reading both SD and MMC cards in the same slot." (Patent Disclosures 4.) Plaintiffs believe it is "likely" that the products in Exhibit 28 are capable of reading both SD and MMC cards, and therefore may infringe Plaintiffs' patents.[8] Plaintiffs assert that after they have conducted discovery, they intend to supplement the list of accused products as appropriate (presumably by moving the suspected products in Exhibit 28 into Exhibit 27, which is the list of known accused products).

Defendants state, without further support, that this attempt to use Exhibit 28 as a placeholder for future potential accused products is improper and contrary to the Patent Local Rules. The court finds that this dispute is not ripe for decision, since Plaintiffs do not yet seek to amend their infringement contentions to add any products listed on Exhibit 28 to their list of accused products.

## IV. Conclusion

---

[7] At the hearing, defense counsel offered two possibilities. Significantly, counsel did not represent that these possible distinctions are actually present in Defendants' own products. One, regarding "means plus function" terms, was so incomplete as to be incomprehensible. As to the other, Defendants point to claim 9 of the '443 patent, which states "wherein the set of contact pins are integrated within molded plastic of the upper portion or the lower portion." (Buscaino Decl. at 10.) Defendants argue that different connectors may not use molded plastic. Therefore, products containing such connectors would not meet that element of that claim. Defendants do not assert that any of their accused products lack a "set of contact pins . . . integrated within molded plastic." At any rate, Plaintiffs' counsel confirmed that products without contact pins integrated within molded plastic do *not* infringe, and are not accused in this litigation.

[8] Plaintiffs are not accusing products of infringement if they have never been capable of reading SD and MMC cards in the same slot. (Patent Disclosures 4.)

8

For the foregoing reasons, Defendants' motion to compel Plaintiffs to amend their infringement contentions is denied.

**IT IS SO ORDERED.**

Dated: August 31, 2015



Donna M. Ryu
United States Magistrate Judge