UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CANON INC., et al., <br><br> Defendants. | Case No. 14-cv-03640-CW  (DMR) <br> Case No. 14-3643 CW (DMR) <br><br> **ORDER DENYING MOTION FOR LEAVE TO AMEND INVALIDITY CONTENTIONS** <br><br> Re: Dkt. No. 368 (14-3640), 135 (14-3643) |
| TECHNOLOGY PROPERTIES LIMITED LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> HEWLETT-PACKARD COMPANY, <br><br> Defendant. | |

Plaintiffs Technology Properties Limited LLC ("TPL") and MCM Portfolio LLC ("MCM"), and Defendants Canon Inc.; and Canon U.S.A., Inc. ("Canon") and Hewlett-Packard Company ("HP") (collectively, "Defendants") filed a joint discovery letter in which Defendants move for leave to amend their invalidity contentions. [Docket Nos. 368 (No. C 14-3640), 135 (No. C14-3643) (Joint Letter).][1] Having considered the parties' briefing and oral argument, Defendants' motion to amend their invalidity contentions is denied.

**I.   BACKGROUND**

In these related patent cases, Plaintiffs allege that Defendants' products infringe one or more patents issued to MCM and licensed by TPL. In March 2012, Plaintiffs filed suits against

---

[1] All further docket references are to the entries in the lead case, No. 14-3640-CW, *Technology Properties Ltd. LLC v. Canon Inc.*, unless otherwise noted.

Canon and HP in the United States District Court, Eastern District of Texas. The suits involve U.S. Patent Nos. 7,295,443 ("the '443 patent"), 7,522,424 ("the '424 patent"), and 7,719,847 ("the '847 patent"), all entitled "Smartconnect Universal Flash Media Card Adapters." [Docket No. 97 (Am. Compl. (Canon)); 102 (Am. Compl. (HP)).] These patents relate to memory card readers, which are used in electronic devices such as laptops and printers to view digital photos and videos. [Docket No. 282 (Pls.' Claim Construction Br.) at 1.] The court issued a stay pending resolution of an action filed by TPL with the United States International Trade Commission ("ITC"), and lifted the stay in February 2014 after the ITC proceedings concluded.

In August 2014, the court transferred the cases to the Northern District of California. In October 2014, these two cases, along with other patent infringement cases brought by Plaintiffs against various defendants, were related before the Hon. Claudia Wilken.

In the present motion, Defendants Canon and HP seek leave to amend their invalidity contentions based on the discovery of three prior art references related to third party SanDisk. The patents-in-suit pertain to memory card readers that can interface with MMC cards and SD cards in a common slot. According to Defendants, MMC cards were developed by SanDisk, and SD cards were later developed by the SD Group, which included representatives from SanDisk, Toshiba, and Panasonic. Two of the new prior art references were discovered through a subpoena to SanDisk. These two documents are the SD Specification version 0.9 and the SD Simplified Specification version 0.9 (the "0.9 SD Specs"). The third reference is a SanDisk product called the SecureMate SDDR-33 Reader (the "SDDR-33"). Defendants argue that all three references are highly relevant because each anticipates and/or renders obvious every asserted claim in this case, and that there is no prejudice to Plaintiffs in allowing the amendment. Plaintiffs oppose the motion.

**II.    LEGAL STANDARDS**

The local rules of the Northern District of California require parties to define their theories of patent infringement and invalidity early on in the course of litigation. *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1359 (Fed. Cir. 2006). "In contrast to the more liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly

conservative, and designed to prevent the shifting sands approach to claim construction." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C. 11-2226-SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013) (citation omitted). Thus this district's Patent Local Rules permit parties to amend their infringement and invalidity contentions "only by order of the Court upon a timely showing of good cause." *See* Patent L.R. 3-6. By requiring a showing of good cause, "Local Rule 3-6 serves to balance the parties' rights to develop new information in discovery along with the need for certainty in legal theories at the start of the case." *Open DNS, Inc. v. Select Notifications Media, LLC*, No. C-11-5101 EJD (HRL), 2013 WL 2422623, at *2 (N.D. Cal. June 3, 2013) (citing *O2 Micro*, 467 F.3d at 1366).

In determining good cause, the court not only considers a party's diligence in searching for prior art or in moving to amend when new information is discovered, *see O2 Micro*, 467 F.3d at 1366, but "also considers such factors as the relevance of the new prior art and the difficulty of locating the prior art." *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 491745, at *4 (N.D. Cal. Feb. 5, 2014) (citation omitted). "The good cause requirement does not require perfect diligence. Although hindsight is often '20/20,' identifying and evaluating prior art can be difficult, and new information learned in discovery can lead a party to understandably reevaluate evidence found earlier." *Id.* at *4; *see also Positive Techs.*, 2013 WL 322556, at *3 (diligence standard does not require defendant to "identify *all* relevant prior art references that *may* become relevant to all possible claim constructions"). Indeed, the Patent Local Rules specifically acknowledge the possibility that a party may need to supplement invalidity contentions with information found during discovery. *See* Patent L.R. 3-6 ("Non-exhaustive examples of circumstances that may . . . support a finding of good cause include: (a) a claim construction order by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the [a]ccused [i]nstrumentality which was not discovered, despite diligent efforts, before the service of the [i]nfringement [c]ontentions.").

The moving party bears the burden of establishing diligence. *See O2 Micro*, 467 F.3d at 1366. "[T]he diligence required for a showing of good cause has two phases: (1) diligence in

3

discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013).

The court may deny a motion for leave to amend invalidity contentions if it would cause "undue prejudice to the non-moving party." Patent L.R. 3-6. Where the moving party is unable to show diligence, there is "no need to consider the question of prejudice," *see O2 Micro*, 467 F.3d at 1368, although a court in its discretion may elect to do so, *see, e.g., Dynetix Design Solutions Inc. v. Synopsys Inc.*, No. CV 11-05973 PSG, 2012 WL 6019898, at *1 (N.D. Cal. Dec. 3, 2012).

## III. DISCUSSION

### A. The 0.9 SD Specs

Defendants contend that they have been diligent in discovering the 0.9 SD Specs. During the ITC proceedings, they identified more than 30 prior art references through discovery, including subpoenas to third parties. However, none of the third parties produced or identified the 0.9 SD Specs. In this lawsuit, HP served a subpoena on SanDisk on June 9, 2015 "in the hopes of locating additional prior art or witnesses." Joint Letter at 2-3. SanDisk produced the 0.9 SD Specs on or around July 10, 2015; Defendants contend that they were not aware of their existence before that date. HP originally noticed SanDisk's deposition for July 23, 2015. After two continuances, SanDisk's deposition took place on October 7, 2015. According to Defendants, the SanDisk deponent confirmed additional facts regarding the prior art references at issue in this motion. Within a week of completing the deposition, Defendants communicated to Plaintiffs their intention to amend their invalidity contentions to include the three references. Defendants provided Plaintiffs with their proposed amended invalidity contentions on October 22, 2015, and moved for leave to amend on October 27, 2015.

Plaintiffs argue that Defendants were not diligent in discovering the 0.9 SD Specs, or in seeking amendment of their contentions to add the prior art references. As to diligence in discovery, they argue that Defendants unreasonably delayed in subpoenaing SanDisk. Plaintiffs point to the fact that the court lifted the stay in these cases in February 2014, but Defendants waited until June 2015 to subpoena SanDisk.

4

The parties agree that SanDisk, as the company that developed MMC and SD cards, is an important third party in the parties' dispute. Accordingly, at the hearing, the court questioned HP about why it waited sixteen months after the court lifted the stay of the cases to subpoena SanDisk. Counsel responded as follows. HP subpoenaed SanDisk and other third parties in the ITC proceedings, and received certain SD Specs, but not the 0.9 SD Specs at issue here. [Docket No. 391, Jan. 28, 2016 Hr'g Tr. at 21.] According to counsel, the discovery phase at the ITC is compressed, and the parties did not have time to do additional research and follow up discovery in that forum. *Id*. at 19-20, 22-23. In this litigation, during the November 2014 initial case management conference ("CMC") before Judge Wilken, the parties agreed on an early claim construction schedule. HP's counsel represented to this court that at the CMC, the parties discussed with Judge Wilken "not going full bore into discovery at that stage until [they] got through the early claim construction." Hr'g Tr. at 24. Defendants sought to conserve litigation resources because the parties anticipated the possibility of an early, informal resolution of the litigation. *Id*. at 26. After the parties' mediation was unsuccessful and the parties started briefing claim construction, HP issued the subpoena to SanDisk in June 2015.

The court has reviewed the transcript of the November 19, 2014 CMC before Judge Wilken. [Docket No. 269 (Nov. 19, 2014 Hr'g Tr.).] It does not confirm HP's representations about the parties' agreement to defer *all* discovery pending an early mediation. Instead, the parties discussed limitations on *damages discovery*, pending settlement discussions. Judge Wilken expressly noted that she did not want to stay all case deadlines pending the claims construction process. *Id.* at 28. However, Judge Wilken considered the possibility that the parties could agree to limit their *damages* discovery pending settlement discussions, and instructed the parties as follows:

> Perhaps you can get enough of a not-every-stone-unturned kind of damages discovery, but a sort of preliminary quick pass on damages discovery that would be good enough for settlement purposes and good enough for commercial success purposes, and do more later if you had to.

*Id*. at 29. There was no discussion of restricting or abbreviating any other type of discovery at the November 2014 CMC. *See id*. at 31.

5

1    The court finds that Defendants have not met their burden of establishing diligence as to the discovery of the 0.9 SD Specs.  Defendants have failed to explain why it was reasonable to wait fifteen months after the stay was lifted, and over six months after the initial CMC, to serve a subpoena on an admittedly key third party.  On this record, in the absence of any justification for why Defendants waited so long to obtain evidence from SanDisk, the court cannot characterize Defendants' conduct as diligent.

Because Defendants have not demonstrated diligence in discovering the 0.9 SD Specs, the court declines to consider whether Defendants were diligent in moving to amend their invalidity contentions, or whether Plaintiffs would be prejudiced by the proposed amendments.

### B.   The SecureMate SDDR-33 Reader

Defendants assert that HP first learned of the SDDR-33 at the end of August 2015.  In response to Defendants' request, SanDisk produced more information regarding the product on September 8, 2015.  Defendants state that they promptly provided these materials to Plaintiff, and indicated their intention to move to amend their invalidity contentions in October 2015, as described above.

Plaintiffs argue that Defendants cannot show diligence with respect to the SDDR-33 because they reasonably should have known of its existence more than two years before August 2015.  According to Plaintiffs, Defendants have possessed information about the SDDR-33 since November 2012.  At that time, a party in the ITC proceedings produced a document that references the SDDR-33, describes it as an SD and MMC card reader, and lists SanDisk as the manufacturer.  Defendants respond that the document to which Plaintiffs refer was produced in the ITC proceedings by Brother, which was a respondent before the ITC, but is not a party to the current litigation.  The document was one of over 1.75 million pages produced by Brother before the ITC.  Defendants argue that a product reference appearing on a single page in such a voluminous production is insufficient to demonstrate that Defendants should have known about the product.  Under these circumstances, the court finds that an isolated reference to a product disclosed in one document out of 1.75 million pages by a non-party was insufficient to put Defendants on notice of the existence of the SDDR-33.

6

//

However, the court's finding does not end the inquiry. At the hearing on this matter, HP's counsel argued that Defendants did not locate the SDDR-33 until late August 2015, despite "[doing] all the searching that we could possibly do for MMC SD readers." Jan. 28, 2016 Hr'g Tr. at 27. In May 2014, Defendants began investigating all of SanDisk's patent applications to locate inventors of the relevant technology.[2] As a result of this investigation, HP located Robert Wallace, a retired SanDisk employee living in Florida. HP scheduled a meeting with Wallace in late August 2015. During the meeting, Wallace showed counsel a prototype of the SDDR-33. Following the meeting with Wallace, HP questioned SanDisk and obtained sales information for the SDDR-33. It also ran internet searches on the particular model number and located the product for sale on amazon.com, and promptly provided the information about the SDDR-33 to Plaintiffs.

On this record, the court cannot say that Defendants were diligent in discovering the SDDR-33. Defendants offered no explanation as to why they did not begin researching SanDisk's patents until 2014, given that the litigation was filed in 2012. Further, although HP's investigation of SanDisk's patents began in May 2014, Defendants did not interview Wallace until August 2015, over a year later. Defendants provided no information about the volume of SanDisk patents at issue in HP's investigation, the number of inventors disclosed on the patent applications, or whether Wallace was particularly difficult to locate. Such information would be probative of whether it was reasonable for Defendants to have taken more than a year to discover this product. In sum, Defendants have not met their burden of establishing diligence in discovering the SDDR-33. Accordingly, the court declines to consider whether Defendants were diligent in seeking amendment, or whether Plaintiffs would be prejudiced by the proposed amendments.

**IV. CONCLUSION**

For the foregoing reasons, the court denies Defendants' motion for leave to amend their

---

[2] At the hearing, HP's counsel represented that Defendants began investigating information in SanDisk's patent applications in early 2015. [Hr'g Tr. at 27-28.] Following the hearing, HP filed a letter to the court in which it clarifies that its investigation of SanDisk's patents "commenced in May 2014, just prior to the case being transferred to California." [Docket No. 385.]

7

invalidity contentions.

**IT IS SO ORDERED.**

Dated: April 19, 2016



_____
Judge Donna M. Ryu
United States Magistrate Judge