IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TECHNOLOGY PROPERTIES LIMITED LLC and MCM PORTFOLIO LLC,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>CANON INC. et al.,<br><br>　　　　Defendants.<br>_____/ | No. C 14-3640 CW<br><br>ORDER ON MOTION TO DISMISS AND MOTIONS TO SEAL<br><br>(Docket Nos. 435, 438, & 456) |

Defendants Canon Inc. and Canon U.S.A., Inc. (collectively Canon) move to dismiss the claims of Plaintiff Technology Properties Limited LLC (TPL) for lack of standing. The Court GRANTS Canon's motion.

PRELIMINARY MATTERS

Canon files two motions to seal. The motion to seal at Docket Number 435 requests filing under seal portions of the opening brief and all of Exhibit 1 to protect the confidentiality of Plaintiffs' documents. Plaintiffs' declaration in response explains that Defendants' brief need not be filed under seal. Further, as to Exhibit 1, only certain portions of the document need to be sealed: section 1 of the License Agreement and the paragraph of definitions in Exhibit C. Docket No. 439 ¶ 9. These portions lay out confidential payment terms--trade secrets--that are not relevant to this motion, and therefore do not undermine policies of access and disclosure. See Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178-79 (9th Cir. 2006). The Court GRANTS Canon's motion in part and DENIES it in part; Canon shall

refile its opening brief without any redactions and Exhibit 1 partially redacted as Plaintiffs request. The Court employs this now-public information.

Canon's second motion to seal at Docket Number 456 is also based on Plaintiffs' confidentiality designations. Plaintiffs filed no declaration within the time permitted establishing that the designated material is sealable. This motion to seal is DENIED.

The Court also GRANTS TPL's Request for Judicial Notice (RJN) asking that the Court take notice of documents from TPL's Bankruptcy Proceeding. Docket No. 452-1.

## BACKGROUND

On April 12, 2006, Plaintiff MCM Portfolio LLC, then known as both FMM and FPL, entered into a License Agreement with TPL. Hertko Dec. in Support, Ex. 1. At the time, MCM was the owner of the patents in dispute here. The License Agreement granted the following license to TPL:

> 2.1. FPL hereby grants unto TPL an exclusive, worldwide, and perpetual license with respect to those rights which enable and/or facilitate the management, development, and commercialization of the MCM Technology.
> 2.2. In conjunction with section 2.1 above, FPL hereby grants, sets-over, assigns, transfers, and conveys unto TPL the exclusive, worldwide right to:
> > 2.2.1. Regulate and control by license, sublicense, affiliation, or other arrangement the practice and/or use of the MCM Technology;
> > 2.2.2. Sue on and collect for its own use and benefit all claims and/or entitlements with respect to damages by reason of past infringement or use of the MCM Technology; and,
> > 2.2.3. Pursue in its own name and for its own use and benefit all remedies of whatsoever kind or nature relating to the past, present, or future infringement or use of the MCM Technology.
> 2.3. Subject, however, to the non-exclusive, product-related rights of IntellaSys (BEC) Ltd and OnSpec Electronic, Inc.

2

License Agreement at pp. 4-5.

On March 28, 2012, TPL filed this suit in the Eastern District of Texas.  TPL stated that it is the "exclusive licensee" of both patents at issue, "with ownership of all substantial rights . . . including the right to exclude others and to enforce, sue and recover damages for past and future infringement." Complaint ¶¶ 11, 23.

On March 20, 2013, TPL filed a bankruptcy petition in the United States Bankruptcy Court for the Northern District of California.  RJN Ex. A.

On April 14, 2014, TPL filed an Amended Complaint (AC) in this case.  The AC added MCM as a Plaintiff, stating that MCM is the "owner" of the two patents at issue, AC ¶¶ 12, 23, and that TPL is the "exclusive licensee," id. ¶¶ 13, 24.  This case was transferred to the Northern District of California in July 2014.

On January 8, 2015, TPL and its creditors submitted a Joint Plan of Reorganization to the Bankruptcy Court, which the court confirmed on March 19, 2015.  As part of the Joint Plan, TPL assumed the License Agreement.  The Joint Plan stated that the License Agreement "shall be modified as follows: as a condition of assumption, TPL shall, at the Effective Date, reconvey all right, title and interest in the CORE Flash portfolio on account of its license back to MCM.  TPL will continue to commercialize and negotiate license of CORE Flash patents and technology without change."  Hertko Dec. in Support, Ex. 2, Joint Plan at 42-43.

On April 16, 2015, TPL and MCM executed an assignment agreement.  The CORE Flash Assignment stated that the Joint Plan provided for "(i) the divestiture of The Patents by TPL and the

3

rejection of all agreements with TPL pursuant to which TPL may have acquired rights with respect to the Patents; and, (ii) the reinstatement of certain TPL commercialization rights." Docket No. 456, Hertko Dec. in Reply, Ex. 5 at 1. The CORE Flash Assignment stated that TPL "grants, sets over, assigns, transfers, conveys, and acquits unto MCM . . . all of TPL's right, title, and interest of whatsoever kind or nature now existing or hereafter arising in and/or with respect to" the patents, including "the right to sue thereon," as well as "[a]ll of the existing License Agreements with respect to The Patents heretofore entered into by TPL with TPL Licensees." Id. The CORE Flash Assignment gave to MCM "the exclusive, worldwide right . . . to regulate and control by license, sublicense, affiliation, or other agreement the practice and/or use of The Patents," as well as the right "to sue and collect for its own use and benefit all claims for damages by reason of past infringement or use of The Patents," among other rights. Id. TPL agreed to the "continuing obligation" to refrain from "litigation involving The Patents." Id. at 2. However, in Paragraph E of this agreement, MCM granted to TPL "the right to represent MCM in connection with the CORE Flash Portfolio and to commercialize and negotiate licenses on behalf of MCM as under the MCM-TPL Agreement and License dated December 31, 2006 as amended on August 6, 2008, which said licenses negotiated by TPL shall be executed by MCM at the direction of TPL." Id.

## LEGAL STANDARD

Constitutional standing requires injury in fact, traceability, and redressability. In the patent context, whether a party is capable of suffering injury in fact is governed by

4

statute. See Morrow v. Microsoft Corp., 499 F.3d 1332, 1339 (Fed. Cir. 2007).

A "patentee," which includes the patentee and the "successors in title to the patentee," is entitled to bring "a civil action for infringement of his patent." Id. at 1339 (quoting 35 U.S.C. §§ 100(d), 281). These patentees and assignees are entitled to sue for patent infringement in their own name because they suffer constitutional injury in fact from infringement. Id. at 1339-40.

Grantees of exclusionary rights, or "exclusive licensees," are "injured by any party that makes, uses, sells, offers to sell, or imports the patented invention." Id. at 1340. These rights "must be enforced through or in the name of the owner of the patent." Id. Usually, the patentee is joined to suits filed by exclusive licensees to satisfy prudential standing concerns. Id.

Plaintiffs who "hold less than all substantial rights to the patent" lack constitutional standing. Id. at 1340-41. This deficiency cannot be cured by adding the patentee to the suit. Id. at 1341.

## DISCUSSION

Canon argues that the CORE Flash Assignment divested TPL of its constitutional standing. TPL disagrees. TPL also argues that, if the Court finds that TPL lost standing, this loss can be cured. As explained below, the Court concludes that the CORE Flash Assignment divested TPL of its constitutional standing. Further, although a party who originally had standing may regain it after losing it, TPL may not be able to cure its loss.

//
//

5

I.   Impact of CORE Flash Assignment

"Determining whether the right to sue for prior infringement has been transferred turns on the proper construction of the assignment agreements, which is a matter of state contract law." Minco, Inc. v. Combustion Eng'g, Inc., 95 F.3d 1109, 1117 (Fed. Cir. 1996).  Canon and TPL agree that California law governs the interpretation of the contracts at issue here.

Under California law, if a contract's language is "clear and explicit" and "does not involve an absurdity," it governs interpretation.  F.B.T. Prods., LLC v. Aftermath Records, 621 F.3d 958, 963 (9th Cir. 2010) (quoting Cal. Civ. Code § 1638).  "It is only in relation to contracts that are uncertain, or of doubtful construction on their face, that the conduct of the parties is to be looked to in aid of construction."  Pierce v. Merrill, 128 Cal. 464, 472 (1900); see also Cal. Civ. Code §§ 1637 (stating that the statutes governing interpretation govern where the intention of the parties to a contract is "otherwise doubtful"), 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible; subject, however, to the other provisions of this Title.").

"Parol evidence is properly admitted to construe a contract only when its language is ambiguous."  F.B.T. Prods., 621 F.3d at 963.  California courts follow a two-step process to determine whether extrinsic evidence should be admitted to resolve an ambiguity.  First, a court examines extrinsic evidence without admitting it to determine whether the language is "reasonably susceptible" to the interpretation urged by the party seeking admission.  Id. (quoting Winet v. Price, 4 Cal. App. 4th 1159,

6

1165 (1992)).  If the language is reasonably susceptible to the interpretation urged, the extrinsic evidence is admitted to aid in the second step of interpreting the contract.  Id. (quoting Winet, 4 Cal. App. 4th at 1165).

The first question is whether the language of the CORE Flash Assignment is susceptible to two meanings.  Canon argues that "TPL unequivocally assigned all of its proprietary interests in the Asserted Patents to MCM via the CORE Flash Assignment."  Opening Br. at 6.  TPL responds that "the parties intended that TPL would be granted the exact same rights that it had under the Commercialization Agreement, however, subject to a modified split of the proceeds from TPL's activities."  Opp. Br. at 7.

As described above, the CORE Flash Assignment stated as background that the Joint Plan provided for both "divestiture" of patents by TPL and rejection of all agreements whereby TPL may have acquired patent rights.  Pursuant to this Assignment, TPL assigned all interests in the patents and all existing licensing agreements back to MCM, including the "worldwide right . . . to sue and . . . to pursue all remedies," as well as the right to regulate and control the patents by licensing or other agreements.  CORE Flash Assignment.  It is clear from these passages that TPL is no longer an exclusive licensee.

TPL argues that Paragraph E of the CORE Flash Assignment creates an ambiguity by reinstating the provisions of the License Agreement that originally granted to TPL exclusive licensing rights.  The plain language of Paragraph E undercuts TPL's argument.  MCM granted to TPL "the right to represent MCM . . . and to commercialize and negotiate licenses on behalf of MCM

7

. . . ." Id.  Nothing in Paragraph E suggests that MCM regranted to TPL an exclusive license.  Further, Paragraph E describes the Agreement and License as a document "which said licenses negotiated by TPL shall be executed by MCM at the discretion of TPL." Id.  This clause limits the relevance of the Agreement and License to the CORE Flash Assignment, rather than incorporating the Agreement and License therein.

Because the CORE Flash Assignment is not susceptible to more than one interpretation, the Court need not admit the extrinsic evidence provided, including the Venkidu Declaration and MCM's Bankruptcy Court motions.  TPL is not an exclusive licensee.  As a result, TPL does not have constitutional standing, even though MCM is a party to the suit.

II. Curing Mootness

TPL argues that, even if the Court decides that the CORE Flash Assignment divested TPL of standing, it should deny Canon's motion "and allow TPL and MCM to amend the agreement to more accurately reflect their true intention."  Opp. Br. at 8.

TPL cites Schreiber Foods, Inc. v. Beatrice Cheese, Inc., 402 F.3d 1198 (Fed. Cir. 2005), in support of its argument.  There, Schreiber Foods owned a patent when it filed suit.  It later assigned the patent to its subsidiary, which gave back to Schreiber Foods a non-exclusive license.  After a trial and verdict, while the defendants' motion for judgment as a matter of law was pending, Schreiber Foods reacquired the patent.  This reassignment came to light after judgment was entered, and a defendant moved to vacate judgment.  The Federal Circuit considered whether judgment was void due to lack of jurisdiction

8

to adjudicate the case. It concluded that the "temporary" mootness between assignment and reassignment did not void the judgment. Id. at 1203. The court explained that in "circumstances where dismissal for lack of initial standing is not required, . . . jurisdictional defects can be cured before judgment." Id. (citing Caterpillar Inc. v. Lewis, 519 U.S. 61 (1996)). Thus, Schreiber Foods's temporary mootness did not undermine its standing because the standing problem was remedied before judgment.

Canon argues that Schreiber Foods's procedural posture renders its analysis inapposite. It is not. Here, as in Schreiber Foods, TPL had standing when it filed its complaint.[1] Further, the Federal Circuit's analysis squarely addresses the effect of TPL remedying its standing issue before judgment--it would not render judgment moot. Therefore, under Schreiber Foods, it is possible to cure a standing lapse by subsequent agreement.

CONCLUSION

The Court GRANTS Canon's motion to seal at Docket Number 435 in part and DENIES it in part. The Court DENIES Canon's motion to seal at Docket No. 456.

The Court will GRANT Canon's motion to dismiss TPL's claims. The dismissal is stayed for one month from the date of this order

---

[1] For this reason, Diamond Coating Technologies, LLC v. Hyundai Motor America, 2016 WL 2865704 (Fed. Cir.), is distinguishable. There, the Federal Circuit held that, where the plaintiff did not have standing when it filed suit, a subsequently-executed nunc pro tunc agreement clarifying the original intent to grant full ownership of the patents at issue did not fix the standing problem.

9

1 to permit TPL to reach an agreement with MCM.  TPL may move to set
2 aside the order within one month if it can regain its standing.
3     IT IS SO ORDERED.

5 Dated:  6/17/2016                  _____
                                     CLAUDIA WILKEN
6                                    United States District Judge